## McQuewans *versus* Hamlin.

The promise of one partner that the firm will pay the debt of a third person, is not binding on his copartners: the authority of a partner over his copartners does not extend so far.

In an action against three persons on a promise to pay the debt of another, a joint promise by them all must be proved: proof that they were partners, and that one of them promised for all, is not sufficient.

The taking of a judgment by one member of a firm, in favour of the firm, for an amount which included a debt owing to a third party, is not evidence of a contract by the firm to pay the debt of such third person.

ERROR to the Common Pleas of *Warren county*.

This was an action of *assumpsit* by B. D. & H. Hamlin against McQuewans & Douglas, to recover a debt due by one R. Phelps Wright, on an alleged promise of the defendant. The facts are fully set forth in a former report on the case in 6 *Casey* 215.

The only additional evidence given on the second trial of the cause, was, that in March 1855, Douglas again visited McKean county to examine into Wright's affairs, and finding him to be insolvent, took from him a judgment for $12,105, which, with the judgments previously confessed, amounted to about $30,000. On these judgments executions were issued, and Wright's personal property was sold for $13,833.87.

There was also contradictory evidence as to whether or not the indebtedness of Wright to the Hamlins was included in the last judgment.

The defendants' counsel presented certain points in writing, upon which they requested the court to charge the jury, the 2d and 5th of which were as follows:—

2. That the alleged assumption by McQuewans, if true, as con-

tended for by the plaintiffs, would not bind the firm, because made in the absence of the other members, without their previous authority or subsequent ratification, and outside of the usual and legitimate business of the company.

5. That the evidence in this case, in respect to the time, place, and circumstances of the alleged assumption, and the extent of it, is not such as will authorize a verdict in favour of the plaintiffs.

The court below (DERICKSON, J.) delivered the following charge to the jury :—

" Were the object of this suit to make the defendants responsible for the debt or liability that R. P. Wright might be under to the plaintiffs, previously contracted, and there was no other evidence on the present occasion than there was on the former one, when the cause was before us for trial, the plaintiffs would have to fail; for to make one answerable for the assumption of another's debt, there must be the clear, explicit, and certain evidence, defining the quantum of indebtedness, and when it should be paid; casual or incidental observations, however cogent they might be in themselves, would not answer, though they might serve to corroborate testimony of a positive character, and could be considered by a jury in that light. But if there is other evidence of a positive, unequivocal, and certain nature, such as R. P. Wright has testified to, that when he gave the last judgment of $12,105 to the defendants, in March 1856, it was made up in part for the goods, &c., furnished by the plaintiffs to him to carry on the lumbering business, of which the defendants were to get the avails, a very different phase is given to the case from what it had before; and if it, with the other evidence, is believed, should entitle the plaintiffs to recover. It is true, that the declarations of Mr. McQuewans, as testified to by Comstock, Backus, Hyde, Martin, and Ford, lack the definiteness essential to a positive and binding undertaking; yet they cannot fail to convince us that there was an understanding of some kind, by which the plaintiffs were to let Wright have goods; and when to these is added the testimony of Wright himself, there is an unmistakeable definiteness; or why are the defendants taking a judgment from him covering the amount of the goods furnished by the plaintiffs? If there was no undertaking by the defendants, or the goods were not furnished at their instance and request, why this caution to secure themselves? The insufficiency of Wright's property to cover his entire indebtedness to the defendants, does not alter the case any, for it might have brought more than enough to do this; at least, it would be open to competition at the biddings. There is, however, an evident and glaring conflict in the testimony of R. P. and of James Wright. If the latter is to be credited, it terminates the case at once, and frees the defendants from all manner of liability. He says, that when in Hamlin's office, in August 1854, having an

[McQuewans v. Hamlin.]

obligation drawn for the advances then made to his brother, the latter wanted the defendants to assume a responsibility for him to the plaintiffs, and Mr. McQuewans remarked that he had not come up to make new arrangements, but to consummate and carry out the conditional promise which Mr. Douglas had made the June previous, to advance $5000 to aid him (R. P. Wright) in his lumbering operations; and yet, notwithstanding this, we find Mr. McQuewans, the same or following day, going with R. P. Wright to Olean, and there procuring him credit for merchandise of various kinds, on the defendants' assumption to pay for them at specified times. If this was so, it serves to show that the witness is either mistaken in his recollection, or that he was not informed of all that occurred or was agreed upon between McQuewans and R. P. Wright at the time.

"In connection with this branch of the case, and on the supposition that the goods were furnished to Wright on the request or guarantee of the defendants, it is contended, that notice should have been given to them of the intended credit, and statements furnished to them, from time to time, of the amount of goods, &c., furnished them. If the whole case rested on this single point, the plaintiffs would have to fail, as there is no direct evidence of notice having been given. But if it be true, that the defendants took from their debtor, Wright, a bond and judgment, covering, among other things, the price of the goods furnished him by the plaintiffs, it would, in connection with all the other testimony, be equivalent to what the law might otherwise require, or be taken as evidence that it had been complied with. The furnishing of statements of the goods supplied, would or would not be necessary, according as the parties may have contracted. If they were to be furnished, but were not, it would be evidence to a certain extent against the plaintiffs, of either the non-existence of any agreement, or of a breach of it. But if there was an agreement of the kind, and the statements were not furnished, this would not exonerate the defendants from liability, unless they were in some way prejudiced thereby. Wright says, he does not know that the plaintiffs and Martins, who were dry-goods men, were to furnish statements, but that Comstock and others, who were grocers, were to furnish them, as they were to be paid every three months, on orders or certificates of Wright; while Hamlin would wait till March, and then take orders payable in June.

"If this is true again, and the plaintiffs base their right of recovery on this position also,—that if the goods were furnished to Wright at the request and instance of the defendants, to enable him to carry on his lumbering business for the benefit and advantage of McQuewans & Co., it was an original liability, and not a collateral undertaking to pay the debt of another. There is evidently a difference between a promise to pay the debt of another

[McQuewans *v.* Hamlin.]

already contracted, and one to pay for goods which may be furnished to such other, at the request of the person who obtains the credit or induces it; and this, the more so, if the latter is to be advantaged thereby, by reaping the fruits of the other's labour, while consuming the goods, &c., sold. The inducement to supply the goods originates in the previous request or promise to pay for them if they are furnished; but for this they might not pass from the owner's possession. But if they had been already given, and a sole liability incurred for them by the purchaser, the promise of another must be based on a good and valid consideration of some kind; or it was simply a guarantee in the first instance,—the evidence in either case must be clear, explicit, and certain, to make him responsible. The evidence should be no less explicit in the one case than in the other. The fact that the charges in the book were made to Wright himself would not alter the law of the case, if it satisfactorily and clearly appears that they were furnished at the instance of the defendants, and for their benefit, in the manner specified,—though it would be a circumstance weakening such a conclusion. Both Wright and the defendants might be original contractors, though not jointly so, and each would be responsible for the same furnished credit.

"Another ground of defence set up is, that allowing there was a contract entered into, or promise made by Mr. McQuewans, which might be binding on him alone, yet it would not be upon his partners. To this we say, that if the contract or promise was not in matters relevant to the business of the firm, and in which the members were alike interested, it cannot be enforced against them. But if it was, as the plaintiffs contend, that Wright was manufacturing lumber for the defendants, and the goods were furnished to him in the outset, at the request or on a guaranty of Mr. McQuewans, to carry on the operations of lumbering, in the manner before specified, and Mr. Douglas, one of the firm, when adjusting the accounts between the firm and Wright, included the goods got of the plaintiff, and judgment was entered on this adjustment, and execution issued and sale made thereon, the firm would be liable. If they are willing to avail themselves of the benefits resulting from the acts of one of their number, not directly or immediately connected with the business of the association, they must do it with the risk of incidental responsibilities. What the business of the defendants' firm was, beyond that of getting Wright to manufacture lumber, the evidence does not disclose; but it does show that they were to get what he made (as they had got for years past from him), and that the goods furnished by the plaintiffs were in intimate connection therewith; and the promise or agreement, if either existed, were also in reference thereto; and, being so, the defendants cannot shift the responsibility by saying that the one who alone did the act is responsible. In con-

clusion, then, we repeat, that if the defendant's witness, James Wright, is believed, the plaintiffs must fail; but if the greater credit is given to the testimony of the plaintiffs' witnesses, they should succeed."

To this charge the defendants excepted; and a verdict and judgment having been rendered for the plaintiffs for $1930.22, the defendants removed the cause to this court, and here assigned the same for error.

*Church & Johnson*, for the plaintiffs in error.

*Wetmore*, for the defendants in error.

The opinion of the court was delivered by

LOWRIE, C. J.—We are quite satisfied that this case, as now presented, is not entirely covered by the opinion which we passed upon it when here before. There is additional evidence requiring further instructions, and we are to inquire whether they have been properly given.

This is an action against three persons on a promise to pay the debt of another, and, of course, a joint promise by them all must be proved. Proof that they were partners, and that one of them promised for all, is not sufficient, for the authority of a partner over his copartners does not extend so far. Everybody admits this. There is no pretence of evidence of any promise by Douglas or by Allan McQuewans, and it is not now supposed, since the former trial here, that the loose declarations of John McQuewans, proved by R. P. Wright, amounted to proof of such a contract, either for himself or for his copartnership. Indeed, it is almost absurd to suppose, that he was volunteering to be security, when Hamlin had just declared that he wanted none.

We have, therefore, nothing for the plaintiffs to resort to, but the fact found by the jury, that Douglas allowed Hamlin's claim to be included in the judgment given in favour of him and his copartners. Of course, we can imply no contract from this except that, if he should get their money under the judgment, he would pay it over to them; and there is no evidence that it was collected. It is not pretended, that any new liability was then expressly undertaken by Douglas. He came to secure the risks already incurred for Wright, and not to assume new ones. Even if he did then promise to pay Hamlin's debt, that would not bind his copartners, for they denied their liability as soon as the claim was presented.

Then what is the relevancy of the fact, that the plaintiffs' claim was included in the judgment? If we had sufficient evidence that McQuewans had made a contract for the firm, it might be evidence

[McQuewans *v.* Hamlin.]

that Douglas assented to it, if this new fact could not be otherwise accounted for. But it is quite naturally accounted for, Douglas evidently did not know the amount of the firm's liabilities for Wright, and, in getting them secured, he had to apply to Wright himself for information. They were both somewhat uncertain, and Wright says that, to be sure to have the judgment large enough, they added several hundred dollars for contingencies, and that Hamlin's claim was included. Then it was not because of any contract, but because of Douglas's ignorance, that Hamlin's claim was included; and the other partners denied their liability as soon as it was insisted on, and thus this fact goes for nothing. Partners are not chargeable with a knowledge of acts which a copartner had no right to do as partner.

There is not a word of evidence of any contract by Allen McQuewans, the only surviving partner, and this, of course, prevents a recovery against the firm. The facts that the firm had a contract to buy all Wright's lumber at Pittsburgh cash prices, delivered at Pittsburgh, and that they had advanced money to him to help him in his business, are no evidence that one partner had authority from the others to assume his debts. There is no evidence to sustain any of the counts of the declaration.

We think, therefore, that the court ought to have affirmed the defendants' second and fifth points, and, of course, we must again reverse the judgment. On both trials, the defendants ought to have had a judgment in their favour. We do not think it expedient to send the case back for a new trial, unless the defendants insist upon it, in order to recover their costs.

Judgment reversed.